IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES L. HARVEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-393-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Charles L. Harvey requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1]Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born October 27, 1955, and was fifty-three years old at the time of his most recent administrative hearing. (Tr. 21, 86). He completed the twelfth grade, and has worked as a trailer manufacturing laborer and a convenience store clerk. (Tr. 38, 134). The claimant alleges that he has been unable to work since December 31, 2005, due to his knees, hips, lower back, and wrist complications. (Tr. 129-130).

## Procedural History

On January 26, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.His applications were denied. ALJ Kim Parrish conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 28, 2009. (Tr. 11-17). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981,416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work, *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, but could only

occasionally stoop, kneel, and crouch. (Tr. 14). The ALJ concluded that the claimant was capable of performing his past relevant work as a convenience store clerk,[2] and that there was also other work he could perform in the regional and national economies, *e. g.*, hand sauterer, fast food worker, and parking lot attendant. (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider his disability rating from the Veteran's Administration (VA), (ii) by failing to properly assess his credibility, and (iii) by failing to properly assess his RFC. The Court finds the first and second contentions persuasive.

The record reveals that the claimant had the severe impairments of degenerative joint disease, chronic knee pain, low back pain, and hip pain. (Tr. 13). Medical evidence shows that in 1994 the claimant had post-traumatic degenerative joint disease of the right knee, with soft tissue herniation through the lateral scar. (Tr. 192) In 1996, an x-ray revealed post-surgical changes consistent with ACL repair, and that the mild degenerative disease involving the medial compartment was stable. (Tr. 167). In January 2002, the claimant sought treatment at the VA for persistent knee pain. (Tr. 171). In July 2008, the VA treated the claimant for chronic low back pain; pain of the knees, hips, ankles, and wrists; and chronic allergy symptoms. (Tr. 230). During an April 2009 examination at the VA, the claimant denied acute complaints and stated he had been taking his medications as directed, but asserted that his pain was chronic and that he was not

---

[2]The claimant asserts in a footnote that his previous employment as a convenience store clerk was an unsuccessful work attempt and therefore does not qualify as past relevant work. In light of the reversal of other grounds, the Court declines to address this argument.

satisfied with his current pain level. (Tr. 220-223). A June 2010 letter from the VA stated that the claimant's "overall or combined rating is 70% [disabled]," but noted that "it then changes to 60% effective April 26, 2010 . . . we are paying you at the 100% rate because you are unable to work due to your service connected disabilities." (Tr. 255). This evaluation was calculated with relation to the claimant's degenerative arthritis in his left and right knees, degenerative disc disease and retrolisthesis L5-S1, left hip strain, right hip strain, right knee injury, and left knee strain. (Tr. 247-252). Dr. Ravinder Kurella performed a consultative examination of the claimant, finding that the claimant had full range of motion with pain of his back, neck, and bilateral hip joints; significant restriction of motion of both knees; full range of motion of his ankle, shoulder, and elbow joints; some restriction of range of motion of his wrist joints; full range of motion of his thumb; a hand grip of 3/5 in both hands; negative straight leg raising tests, and normal dorsi-flexion of the great toe and dorsi-inversion of the foot; and a normal gait associated with some knee pain. (Tr. 198).

At the administrative hearing, the claimant testified that he was in the military from 1979 to 1982, and that he has had problems in both knees, as well as his hips and back. (Tr. 23-24). He stated that he wore a metal brace to provide stability to his right knee, but that the brace had recently broken and he was in the process of getting it replaced because it provides stability and control even though he is able to walk the same distances with or without it. (Tr. 24-25). He testified that he lives approximately three to four blocks from a store that he tries to walk to every day, that he stops halfway between his house and the store to rest, and that he walks there "sometimes twice a day." (Tr. 25,

30). As to his time as a convenience store clerk, the claimant testified that worked full-time for two months, then reduced to part-time work for a month, before he had to quit because the pain was so bad he could not sleep at night and he frequently had to take breaks at work even when he was working part-time. (Tr. 26-27). Additionally, he stated that he has one "little chore" each night at the house for recovering alcoholics where he stays, such as sweeping, mopping, cleaning the laundry room, or doing dishes, and that the chore usually takes only fifteen minutes (but dishes took up to forty-five minutes) and he takes breaks to sit on the couch when he does them. (Tr. 33-34). He stated that he takes pain relievers, but no narcotics because he is a recovering alcoholic and his healthcare providers were concerned about his risk of addiction. (Tr. 28).

  In his written opinion, the ALJ summarized the claimant's testimony and the medical record. The ALJ's credibility analysis stated, "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 14). The ALJ described the claimant's daily activities as "sitting outside" and walking "about 16 blocks per day," in addition to talking with friends, watching television, attending sports events, shopping, and preparing meals. He then found that the claimant's activities were not as limited as one would expect with disabling pain. (Tr. 16). As to the claimant's VA disability rating, the ALJ stated, "[c]laimant reported that he was 60 percent service connected for his knee, hip,

and back impairments.  However, the record showed that claimant was 10 percent service connected in 1994.  Nevertheless . . . the issue whether claimant is disabled is reserved to the Commissioner."  (Tr. 16).

Deference is generally given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole, *see Casias*, 933 F.2d at 801, and an ALJ may disregard a claimant's subjective complaints if they are unsupported by any clinical findings.  *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).  But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].  A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'"  *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  The ALJ's credibility determination fell below these standards.

First, the ALJ mentioned but did not discuss the credibility factors set forth in Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529, 416.929, and further failed to apply them to the evidence.[3]  He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" is insufficient, *Hardman*, 362 F.3d at 678,

---

[3]The factors to consider in assessing a claimant's credibility are:  (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; (vii) any other factors concerning functional limitations.  Soc. Sec. Rul. 96-7p at 3, 1996 WL 374186 (1996).

*quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4, and the ALJ did not even do that. He mentioned Soc. Sec. R. 96-7p and briefly summarized the evidence, including the claimant's testimony, but did not affirmatively link any of the evidence to specific factors. *See Kepler*, 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible."); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence[.]").

Second, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC. *See Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of

credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.").

Third, the ALJ's finding that the claimant's statements as to his impairments were not credible in light of his own description of his activities and lifestyle appears to be simply boilerplate language because the ALJ misstated and/or underplayed the claimant's daily activities. In fact, the claimant's testimony was that he can walk two blocks before taking a break, and even takes breaks when performing chores that take approximately fifteen minutes. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence[.]").

The ALJ's treatment of the claimant's disability rating was likewise deficient. First, the ALJ simply stated that the finding of disability went to an issue reserved to the Commissioner but did not explain why it was not persuasive. *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480. Second, the 2010 report from the VA qualifies as new evidence that the ALJ should consider. The Appeals Council was

required to consider this evidence if it was: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). Although the parties do not address whether the evidence submitted by the claimant after the hearing qualifies as new evidence, the Appeals Council *did* consider it (Tr. 4), and the Court therefore has no difficulty concluding that it does qualify. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record . . . assess[ed] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard."). The report was not duplicative or cumulative, and reasonably calls into question the disposition of the case because the ALJ relied in part on the conflict between the claimant's testimony about his disability rating compared to the ALJ's perception of the claimant's disability rating. *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991); *Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In fact, the ALJ's opinion indicates he believed the claimant's report of being 60% disabled was untrue, and that the claimant was only "10 percent service connected in 1994." (Tr. 16). Additionally, the evidence pertains to the time "period on or before the date of the ALJ's Decision," because it discussed the claimant's previous disability ratings as well as current ratings. *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Thus, the ALJ had no opportunity to perform

-10-

a proper analysis of the newly-submitted evidence in accordance with the authorities cited above.

Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman* and further failed to properly consider the VA's disability rating, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma